IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WILLIE DEAN GOSHEN                                                                    PLAINTIFF

V.                                         NO. 09-1033

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Willie Dean Goshen, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed her applications for DIB and SSI on January 11, 2006, alleging disability since February 2, 2004. (Tr. 76-78, 130-135). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 59-62, 65-70, 136-139). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 26, 2007, where Plaintiff, Plaintiff's mother, and a Vocational Expert (VE) appeared and testified. (Tr. 140-174). On October 19, 2007, the ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 22-36) . The ALJ found that Plaintiff had the following severe impairments: history of

diagnoses of and/or treatment for carpal tunnel syndrome in the right upper extremity and capsulitis of the right wrist. (Tr. 34 ). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform a wide range of sedentary work. (Tr. 34). He found that Plaintiff would not be able to perform any past relevant work, but with the assistance of the VE, concluded that there were jobs in the national economy that Plaintiff could perform, such as telephone operator and telemarketer. (Tr. 35). Plaintiff's request for a review was denied by the Appeals Council on June 25, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr.3-5).

**Evidence Presented**

Plaintiff was born in 1960 and completed the eleventh grade in high school. (Tr. 144-145). She previously worked as a laborer at a poultry factory from 1988 to 1991 and from 1997 to 1999;[1] as a laborer at an automotive plant from 2000 to 2004; and then worked for one month in 2004 at a poultry factory.

On March 7, 2006, Dr. Donna J. Zahniser conducted a general physical exam of Plaintiff for the Social Security Administration. (Tr. 109-115). Plaintiff advised that she began having numbness in her lower right arm when she worked at the automotive plant, and was thereafter placed on light duty. Since her arm continued to hurt while on light duty, Plaintiff quit the position. (Tr. 109). Dr. Zahniser found that Plaintiff's spine range of motion was normal; that passive range of motion in her extremities was normal; and that there was no muscle atrophy.

---

[1] Plaintiff did not work from 1992 to 1996.

Although Plaintiff had a reduced sensation to a pin prick in her right arm and forearm, she was able to hold a pen and write, touch her fingertips to her palm, oppose her thumb to fingers, and pick up a coin. She was also found to have 90% grip in her right hand. (Tr. 113). Dr. Zahniser diagnosed Plaintiff with right arm and forearm numbness since 2003, and said that Plaintiff could carry items but had to watch her right arm to be sure "all was ok." (Tr. 115). Although Dr. Zahniser noted that Plaintiff needed glasses to read, her uncorrected central visual acuity was 20/25. (Tr. 111).

On March 28, 2006, a MRI of Plaintiff's right wrist revealed no fracture or dislocation and no evidence of a ganglion cyst. (Tr. 117). There was mildly increased signal consistent with edema noted on the dorsal surface adjacent to the carpal bones deep to the extensor mechanism, and the carpal tunnel was normal. No evidence of tenosynovitis was seen. The impression was found to be dorsal rim capsulitis.[2]

An undated clinic report reflected that Plaintiff complained to Dr. Charles N. Ekinde of wrist pain with radiation along the right arm. (Tr. 120). Plaintiff's wrist would easily swell up after use of the limb for any kind of work or movement, which had been ongoing for about three years. (Tr. 120). Dr. Ekinde found her right wrist tender to palpation and with range of motion. Minimal swelling was noted and sensation was intact to the hand. Dr. Ekinde diagnosed Plaintiff with carpal tunnel syndrome, and recommended that Plaintiff wear a wrist brace as often as possible. (Tr. 120). On April 4, 2006, Plaintiff presented herself again to Dr. Ekinde for follow-up. Dr. Ekinde noted that the MRI of her right arm showed dorsal rim capsulitis, but with no

---

[2]Dorsal - pertaining to the back or to any dorsum; Capsulitis - inflammation of a capsule as that of the lens, joint, liver, or labyrinth; Rim - a border or edge. Dorland's Illustrated Medical Dictionary 570, 290, 1672 (31st ed. 2007).

carpal tunnel problems. (Tr. 118). He gave Plaintiff's arm an injection, and she tolerated the procedure well. (Tr. 119).

On April 10, 2006, Dr. Robert Redd completed a Case Analysis, stating that given the absence of an objective etiology for Plaintiff's complaints (normal musculature, and absence of atrophy or joint deformity), it was his opinion that Plaintiff's physical RFC was "Nonsevere." (Tr. 125). In a later Case Analysis report dated August 16, 2006, Dr. Steve Owens reported that he had reviewed all of the evidence in the file and affirmed the assessment of April 10, 2006, as written. (Tr. 122).

Plaintiff presented herself to Dr. Ekinde again on September 19, 2006, with pain in her right wrist. (Tr. 128). He prescribed Naproxen and advised her to continue to wear the wrist brace. (Tr. 129).

In a Social Security Disability Report dated January 10, 2006, Plaintiff stated that she suffered from sharp pain, swelling, weakness, some numbness, loss of vision, and headaches. She stated that her pain was located in her right arm, hand, eyes, head and left leg. (Tr. 92). She said that she could stand or walk for only one to two minutes before pain occurred, and that she took over the counter medicine. (Tr. 92-92). She stated that on a daily basis she ate, watched television and tried to sleep. (Tr. 94). She said she had trouble dressing, bathing and doing her hair. (Tr. 95). She did not do house or yard work because of her arm, she had no hobbies, and could only walk a block before needing to stop and rest for about 15 minutes. (Tr. 99).

Only eight months later, in a Social Security Adult Function Report dated August 8, 2006, Plaintiff reported that on a daily basis, she sat around, laid around, took medication and slept. (Tr. 82). She stated that her "condition" would not let her do anything. (Tr. 85). She said

that she could not follow written instructions, because her eyes were really "messed up" - her vision was blurry all the time. (Tr. 87). She stated that she suffered from unusual fatigue "that began some time ago" and required a 2-3 hour nap once a day.[3] (Tr. 90). She stated that pain in her right arm, hand, left ankle, and foot interrupted her sleep, and that walking, standing, stooping, and bending caused pain. (Tr. 90). She was taking Ketoprofen and Methylprednisolone, and stated that she needed her medication but could not get it anymore because she could not afford it. (Tr. 91).

At the hearing held on April 26, 2007, Plaintiff testified that she had not had surgery for her carpal tunnel syndrome or had therapy on her arm because she did not have any money. (Tr. 149). However, she also testified that she had not gone to any clinics to see if they could help assist her because of her lack of funds. (Tr. 166). She indicated that she did go to the welfare office and was given a number to call, but when she called, she was told they could not help her. (Tr. 166). She was not given any explanation as to why they could not help her, and did not pursue it any further. She stated that she took Naproxen for pain and bathed her arm in Epsom Salt water. (Tr. 156).

Plaintiff testified that she had pins in her left leg and could not walk because she had surgery in the 1970's when she broke her ankle. She said that when she went to the grocery store, she could maybe walk down two aisles, then had to stop. (Tr. 159). She said that her ankle stayed swollen everyday. (Tr. 161). With respect to her vision, she stated that she had two pair of glasses, but lost one pair and thought someone stole the other. (Tr. 159).

---

[3]The Court notes that only eight months earlier, Plaintiff stated that she did not suffer from unusual fatigue or require naps or rest.

Plaintiff also testified that each day, she got up at around 9 am or 10 am and ate breakfast, listened to television, and that her mother did most of the housework. (Tr. 162). She attended church but did not stay the full time because her leg would get numb and cramp. (Tr. 162). Plaintiff's mother testified that Plaintiff "bawls with her hand all the time," and that her foot hurt her all the time. (Tr. 164).

The ALJ presented a lengthy hypothetical to the VE, discussing Plaintiff's carpal tunnel syndrome as well as Plaintiff's other alleged impairments. The VE indicated that there were jobs in the national economy that Plaintiff would be able to perform.

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden

AO72A
(Rev. 8/82)

of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

**I. Plaintiff's Impairments**

The ALJ properly noted that there was no indication the Plaintiff received any actual medical treatment for any condition during the period from the alleged onset date of February

AO72A
(Rev. 8/82)

2, 2004 to March 28, 2006. (Tr. 27).

Plaintiff alleged that one of her impairments was her poor vision. However, as stated earlier, Plaintiff's uncorrected visual acuity was 20/25, and there is no documented medical evidence to indicate that Plaintiff had any significant vision problems. Plaintiff also complained of problems with her left leg, which resulted from ankle surgery performed in the 1970's. Once again, the physical examination revealed normal range of motion in Plaintiff's spine and extremities, as well as normal limb function. No medical treatment was sought or received for the left lower extremity during the relevant time period. Plaintiff also alleged that she suffered from headaches. However, there is nothing in the record to indicate that Plaintiff ever sought medical treatment for this alleged condition or advised a physician of the fact that she suffered with headaches. Failure to seek regular treatment or obtain pain medication has been found to be inconsistent with complaints of disabling pain. Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996). The Court believes there is substantial evidence to support the ALJ's findings that the only severe impairment suffered by Plaintiff was the diagnosis of and/or treatment for carpal tunnel syndrome in the right upper extremity and capsulitis of the right wrist.

With respect to Plaintiff's carpal tunnel syndrome of the right hand and capsulitis of the right wrist, the only limitation given by Dr. Zahniser as to Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak was that Plaintiff could carry, but had to watch her right arm to be sure everything was "ok." No other limitations or restrictions were noted. Accordingly, Dr. Redd concluded that Plaintiff's carpal tunnel syndrome was "nonsevere." Nevertheless, the ALJ found it to be severe for purposes of the Act and proceeded with the next step in the evaluation.

## II. Plaintiff's Credibility

With respect to Plaintiff's allegation that she was unable to afford medication or further medical treatment, the ALJ found Plaintiff less than credible.

> While it is acknowledged the claimant has alleged being unable to afford medical treatment or surgery, it would appears[sic] she has not made any attempt to secure subsidized or free medication and/or medical treatment. There are several avenues available in Arkansas at both the county and state level which will provide assistance in obtaining medical treatment and also prescription medication for eligible individuals who might need it. The pharmaceutical industry also has a long-standing tradition of drug manufactures[sic] being willing and able to provide prescription medication free of charge to physicians whose patients may not otherwise have access to necessary medications and who apply for a patient assistance program. It would seem logical that an individual with the symptoms, limitations and restrictions of the severity alleged by the claimant would have made all possible efforts to obtain any needed medical treatment and/or prescription medication. The Administrative Law Judge therefore finds it inconsistent that the claimant has apparently not actively sought any outside help with getting medical treatment and/or with obtaining any necessary prescription medications if her motive truly were to improve her alleged disabling conditions well enough to be able to return to gainful work activity.

(Tr. 30).

"Although lack of financial resources may in some cases justify the failure to seek medical attention" or follow prescribed treatment, such is not the case here. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) quoting from Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). Plaintiff did not make any serious attempt to secure subsidized or free medication and/or medical treatment. This is clearly a factor the ALJ may consider in assessing Plaintiff's credibility. Failure to seek medical assistance and failure to discuss such alleged uncontrolled severe pain with a medical care professional is contradictory to Plaintiff's subjective complaints. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); see also Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain

based on the claimant's failure to pursue regular medical treatment).

The ALJ also fully discussed and considered Plaintiff's subjective allegations and complaints, utilizing the criteria set forth in Polaski V. Heckler, 751 F.2d 943 (8th Cir. 1984) and Social Security Ruling 96-7p, 20 C.F.R. § 404.1529 and 416.929. The Court believes that there is substantial evidence to support the ALJ's finding that Plaintiff's limited daily activities are not supported by the objective medical evidence contained in the record. There was no medical evidence to support Plaintiff's allegations that she was unable to walk, sit or stand for the periods of time she alleges. At no time did any physician indicate that Plaintiff had any restrictions or limitations in this regard. On the contrary, the evidence reflected that Plaintiff had good range of motion with her limbs, and had full use of her left upper extremity and both lower extremities. Furthermore, Plaintiff did not seek out or receive extensive treatment or physical therapy in an attempt to control her alleged pain and other alleged disabling symptoms, and was not prescribed strong prescription medication for pain relief.

### III. Residual Functional Capacity

The ALJ found that Plaintiff had the RFC to perform a wide range of sedentary work activity. He recognized that she had manipulative limitations in the areas of being unable to do any assembly-type work and being able to occasionally perform activities like reaching and grasping, but did not have any other additional significant postural, manipulative, environmental, communicative limitations, or mental restrictions. The Court believes there is substantial evidence to support the ALJ's finding relating to Plaintiff's RFC.

### V. Vocational Expert

The ALJ presented the VE with a lengthy first hypothetical, prefacing it by asking the VE

to consider a hypothetical claimant much like the Plaintiff. He then went through all of Plaintiff's impairments, including those he did not find to be severe, and asked the VE to assume that the individual could not work assembly-type work that required constant reaching and grasping of the right hand and wrist. In response, the VE testified that the jobs of welcome hostess and storage facility rental clerk would be available. The ALJ then presented a second hypothetical to the VE, asking the VE to assume that the pain was more moderate, more restrictive, and that the individual would be restricted to do only sedentary type work, and to state what jobs would then be available. The VE stated that the jobs of telephone operator, Dictionary of Occupational Titles (DOT) 235.662-022, and telemarketer, DOT 299.357-014, would be available. The Court notes that for the telephone operator position, according to the DOT description, "reaching" is required frequently; "handling" is required constantly; and "fingering" is required frequently. For the telemarketer (telephone solicitor) position, "reaching" is required occasionally; "handling" is required occasionally; and "fingering" is required frequently. "Generally, when expert testimony conflicts with the DOT, it is the DOT which controls." Montgomery v. Chater, 69 F.3d 273, 276 (8th Cir. 1995). However, the DOT classifications may be rebutted with VE testimony which shows that "particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform." Id., quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

In the present case, with respect to the telephone operator and telemarketer positions, Plaintiff's attorney asked the VE at the hearing if the positions would require the use of a computer, to which the VE replied:

The telemarketer position would require use of a computer, but . . . the computer[s] for

the new telemarketing positions . . . are used for dialing the numbers. All of the numbers are on a computer and it's basically a matter of the employee learning how to press the enter button for the number to be dialed while they wear a headset, and it automatically dials the number. With an SVP of three the training for that particular job would be from one month to six months of training.

The Court believes the VE's testimony was sufficient to rebut the DOT classification by showing that the telemarketing position was one that Plaintiff could perform, and was therefore an acceptable basis for the ALJ's conclusions. See Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995). The Court recognizes the Eighth Circuit Court of Appeals' holding in Renfrow v. Astrue, 49 F.3d 918, 921 (8th Cir. 2007), where the Court held that the ALJ was required not only to ask the VE whether there was a conflict between the VE evidence and the information provided in the DOT, but also to obtain an explanation for any such conflict. However, in the present case, the VE was asked whether, in the two positions, the use of a computer was required, and the VE explained that such use was minimal in the telemarketer position. The Court is therefore of the opinion that the facts in this case are distinguishable from those in Renfrow, and that the conclusion reached in this case is consistent with that in Renfrow. The hypothetical questions posed to the VE accurately reflected Plaintiff's RFC as found by the ALJ, and the ALJ was therefore entitled to rely upon the opinion of the VE that there were jobs in the national economy that Plaintiff could perform.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and recommends affirming the decision of the ALJ. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. §636(b)(1). The**

**failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 1st day of June, 2010.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)